Richard J. Cardamone, J.
The plaintiff, Linda B. Grotke, a resident voter and taxpayer in the City of Auburn, Cayuga County, New York, has brought an action for a declaratory judgment (as a class action on behalf of all the taxpayers and voters of Cayuga County) that the present apportionment of the Cayuga 'County Board of Supervisors is unconstitutional.
Joined as defendants and interposing answers in the action with the Board of Supervisors of Cayuga County are the State of New York and the City of Auburn. The plaintiff has moved for summary judgment in her action on the ground that there is no issue of fact involved.
The Cayuga County Board of Supervisors is presently made up of 33 members; one from each of the 10 wards in the City of Auburn and one from each of the 23 towns in Cayuga County.
The population of Cayuga County, according to the 1968 special Federal Census, is 73,923, not including the inmates of Auburn Prison. The City of Auburn, its largest municipality, comprises 32,260 people. There is one supervisor for every 2,240 citizens.
The census figures reveal the population of Ward 1 (plaintiff’s residence) to be 4,112. The largest ward in Auburn (Ward 2) has 5,498 people, the smallest (Ward 5) 931. The largest of the 23 towns is Owasco with a population of 3,584 and the smallest is Sempronius with 661. Seventeen supervisors (one *954 more than half the board) exercise voting control of the board. These 17 supervisors, from the 15 smallest towns and 2 smallest wards in Auburn, represent 21,722 persons or 29.38% of the population of 'Cayuga County.
‘ ‘ The conception of political equality * * * can mean only one thing — one person, one vote ” (Gray v. Sanders, 372 U. S. 368, 381). The Fourteenth Amendment to the Constitution requires that the State Legislature be apportioned on the basis of population (Reynolds v. Sims, 377 U. S. 533, 568); and this has equal application to local elective legislative bodies (Seaman v. Fedourich, 16 N Y 2d 94, 101). The Cayuga County Board of Supervisors as a political subdivision of the State exercises only those powers delegated to it by the State (N. Y. Const., art. IX, § 1). This municipality must insure that the vote of each citizen is approximately equal in weight to that of every other citizen in Cayuga County. Such right is guaranteed the citizens of Cayuga County by the provisions of section 11 of article I of the New York Constitution and the Fourteenth Amendment to the United States Constitution.
The threshold question to be determined is whether the present districts from which Supervisors are elected to constitute the Cayuga Board of Supervisors are apportioned to meet the constitutional requirement of “lone person — one vote ”. Clearly, they are not. The present apportionment of the Cayuga Board of Supervisors violates the Equal Protection provisions of the Fourteenth Amendment of the Constitution of the' United States and section 11 of article I of the Constitution of New York State.
No issue of fact has been raised here but only questions of law. Consequently, summary judgment will be granted to the plaintiff in her declaratory judgment action.
There remains for consideration the appropriate relief to be afforded plaintiff. ‘ ‘ Legislative reapportionment is primarily a matter for legislative consideration and determination * * * judicial relief becomes appropriate only when a legislature fails to reapportion ”. (Reynolds v. Sims, supra, p. 586.) In 1965 the defendant Board of Supervisors appointed a special committee on reapportionment to make recommendations to the board; the special Federal Census of 1968 was made at its request. Thereafter, in 1969 the special committee recommended a modified weighted voting apportionment plan which was adopted by the Board of Supervisors on June 17, 1969 (Local Law No. 2). Petitions were filed with the requisite number of signatures mandating a public referendum on Local Law No. 2 at which it was defeated on November 4, 1969 by a *955 vote of 7,872 to 6,182. The plaintiff instituted her action on December 29, 1969.
Cayuga County is a noncharter county and in the absence of court ordered reapportionment had available to its only weighted voting or charter government. The Board of Supervisors decided that weighted voting appeared to best serve the needs of the county. The proceedings of that legislative body reflect consideration and study on this commencing on March 16, 1965 and increasing activity by the board through 1966-1969 culminating in the submission to and. rejection by the voters of weighted voting on November 4, 1969.
On May 22, 1969 the State Legislature enacted chapter 834 of the Laws of 1969 amending the Municipal Home Rule Law and the General Municipal Law relating to the apportionment of local government legislative bodies. This statute affords noncharter counties the power to reapportion by implementation of a districting plan without having to adopt the charter form of county government (Municipal Home Rule Law, § 10, subd. 1, par. a, subpar. [13]).
It is evident that the defendant Board of Supervisors attempted to meet the constitutional mandates within the powers available to it at the time. Since the enactment of chapter 834 of the Laws of 1969 in May and the defeat in November 1969 of weighted voting, this court cannot find under the sequence of these events that the defendant board has failed to reapportion after having had an adequate opportunity to do so.
Clearly, section 150 of the County Law (as well as subdivision 1 of section 20 of the Town Law and sections 3 and 4 of the Charter of the City of Auburn) as applied to Cayuga County are unconstitutional (Iannucci v. Board of Supervisors of Washington and Saratoga Counties, 20 N Y 2d 244, 250). The defendant Board of Supervisors is directed to submit a constitutionally valid reapportionment plan in accordance with the powers granted to them by the Municipal Home Rule Law (§ 10, subd. 1, par. a, subpar. [13]; L. 1969, ch. 834).
The defendants should have adequate time to prepare and submit this plan. The first day for filing designating petitions is March 30, 1970. Such does not allow sufficient time for the defendant Board of Supervisors to submit a plan. In this connection it is to be noted that the 10-day time limitation directed by the Appellate Division in Iannucci v. Board of Supervisors (27 A D 2d 346, 348 [3d Dept., 1967]) was modified by the Court of Appeals and 60 days were given the defendant board (Iannucci v. Board of Supervisors, supra, p. 254).
*956 The question remains as to what should be done in the interim. Weighted voting merely appears to he an acceptable temporary solution of an intolerable situation (Reapportionment, 79 Harv. L. Rev. 1226, 1256 [1966]). It is useful “ solely as a temporary expedient ’ ’ (Matter of Graham v. Board of Supervisors of Erie County, 18 N Y 2d 672, 674; Franklin v. Mandeville, 26 N Y 2d 65).
To plunge into a “ mathematical quagmire ” (Baker v. Carr, 369 U. S. 186, 268) understood only by experts using computers, does not appear to this court to be a constructive method of obtaining equal representation for the citizens of Cayuga County even though the same be but an interim measure. (Banzhof, Weighted Voting Doesn’t Work: A Mathematical Analysis, 19 Rut. L. Rev. 317 [1965].) Because of the complications caused by requirements for a two-thirds majority and potential disenfranchisements, weighted voting may not be a suitable vehicle for use in reapportionment on any basis (Johnson, An Analyses of Weighted Voting as Used in Reapportionment of County Governments in New York State, 34 Albany L. Rev. 1, 45 [1969]). Further, to impose weighted voting as an interim measure now would involve representation of the citizens by three separate plans between now and the adoption of the permanent plan, i.e., representation as constituted (1) presently; (2) by weighted voting; and (3) as reapportioned by redistricting in the permanent plan. Thus, imposition of interim weighted voting appears to be needlessly complicated and unnecessary.
The County of Cayuga has long operated under its present form of government. In view of the fact that the 1970 Federal Census enumeration will be available later this year, it appears preferable to retain the present representation while the Board of Supervisors proceeds to promulgate a plan of reapportionment meeting constitutional standards for use in future elections (Honig v. Board of Supervisors of Rensselaer County, 24 N Y 2d 861, 862).
Nevertheless, upon the application of any of the present parties to this pro’ceéding within 30 days of the date of the order herein that interim weighted voting be imposed, a hearing will be scheduled on 10 days’ notice to the interested parties for an appropriate hearing, at which time the proponent will have the burden of proving, by computer analysis, that the proposed plan is not defective (Iannucci v. Board of Supervisors, supra, p. 254).
The defendant Board of Supervisors should submit to this court within 60 days after the date of entry of the order a *957 permanent reapportionment plan. Subsequent to submission, an application to modify the plan to incorporate the enumeration made by the 1970 Federal Census may he made if the same is deemed necessary to insure the constitutionality of the plan (Franklin v. Mandeville, 26 N Y 2d 65, supra).
If the plan as submitted creates a new elective office it is subject to a mandatory referendum (Municipal Home Buie Law, § 23, subd. 2, pars, f, g, h).
It should be stressed that the Board of Supervisors must proceed as promptly as circumstances permit to (a) promulgate the plan of reapportionment of Cayuga County; (b) incorporate the census enumeration of 1970 at a later date in the plan, if deemed necessary; (c) submit the plan within 60 days to this court which retains jurisdiction for that purpose; (d) make application to this court within 30 days for interim weighted voting, if the board or any other interested party is so advised; (e) place the plan on the ballot for a public referendum in the general election to be held in the fall of 1970. Thus, if the permanent plan is approved by the voters of Cayuga County the newly apportioned County Board of Legislators will be elected at the general election to be held in the fall of 1971.